UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MICHELLE MILLER and
DONALD LEE MILLER, II                                               PLAINTIFFS


v.                                                    CIVIL ACTION NO. 3:11-cv-315-CRS


REMINGER CO., L.P.A. and
SHEA CONLEY                                                         DEFENDANTS


## MEMORANDUM OPINION

This matter is before the court on motion of the defendants, Reminger Co., L.P.A. ("Reminger") and Shea Conley ("Conley" and collectively, "Defendants") to dismiss the claims of the plaintiffs, Michelle Miller ("Michelle") and Donald Miller ("Donald" and collectively, "Plaintiffs") pursuant to Fed.R.Civ.P. 12(b)(6).  (DN 7).  Plaintiffs have responded to the motion (DN 23) and Defendants have replied (DN 24), making the matter now ripe for adjudication.  For the reasons set forth below, the motion will be granted in part and denied in part.

### I. BACKGROUND

We must accept as true for purposes of considering Defendants' motion to dismiss, the following allegations in the Complaint: Plaintiff Donald was employed at Brown, Todd & Heyburn (later Frost Brown Todd) ("FBT") from 1984 until 2007.  Donald then formed his own practice group with a number of other lawyers and staff members from FBT.  Donald's relationship with this

new start-up firm ended thereafter and in February or March of 2009, Donald spoke with Shea Conley ("Conley") from Defendant Reminger's Lexington office about joining Reminger.  After additional discussions with Conley and several of Reminger's Ohio partners, Donald agreed to take the job.

Donald's departure from his start-up firm with his former FBT colleagues was personally difficult.  Because of this difficult separation and alleged representations from partners at Reminger, Donald was willing to take a reduced salary with Reminger because he was promised that he would receive performance-based bonuses which would make up for the reduced salary, if his business generation was consistent with his past history.  Donald started working at Reminger in March of 2009 and opened the Louisville office for Reminger.

Donald believes he was hired in part because of his loyal clients that Reminger anticipated would follow Donald to Reminger.  Donald served as outside counsel for a number of companies who came with him to Reminger.  Donald alleges that despite his generation of over one hundred new clients and quick growth of the legal business, he was not paid bonuses based on this generated income as he was promised.  Donald was also urged by Reminger to reassign some of his long term clients to other attorneys in Reminger, including Ohio partners who were not licensed in Kentucky.

In October of 2010, Donald was approached by a client with concerns about billing irregularities from Ohio Reminger attorneys.  The client presented Donald with statistics showing that Reminger's numbers were skewed compared to other law firms working with that client.  The statistics showed that Reminger was the most expensive of the firms, there was an absence of the use of paralegals, and more hours were billed than customary for similar matters.  Donald investigated the matter and discovered that time spent working by paralegals and entered into the

- 2 -

system with the initials of paralegals had been later changed by Reminger to read as time worked by attorneys at the firm, which charged the client a higher rate.  Donald protested this practice and directed the Reminger billing staff to accurately reflect the hourly rate level of the person actually performing the task when billing his clients.

In November of 2010, Donald and Michelle were required to attend a retreat in the Bahamas for the firm's attorneys, despite their reservations on going because of the billing issues Donald raised with Reminger, and personal obligations of his family.  Plaintiffs allege many inappropriate comments were made throughout the retreat.  A Reminger principal, Mario Ciano ("Ciano") allegedly stated to Michelle, "Look Michelle, we took a chance on Don.  We just don't hire old guys like Don, look around you.  We hire young people, and brain wash them, and keep them for years. We do have our token black man, too."  Further, Conley stated to Michelle, "Why can't Don just fall into line with this paralegal stuff?"  Plaintiffs allege that he was referring to the changes of paralegal billing time to that of an attorney.  Plaintiffs allege many sexist comments were also made that were inappropriate.  During a formal presentation, Ciano allegedly made inappropriate comments about female anatomy, encouraging touching secretaries on their "back but not on their breasts."  Other partners allegedly discussed renting mopeds to visit the grave of Anna Nicole Smith to see "'titties' on her headstone."

Last, at the final dinner and dance for the retreat, Ciano allegedly became insistent that Michelle dance and grabbed her left upper arm to pull her onto the dance floor and stated "Get your fat ass out there and dance."  Michelle pulled away, saying "You just called me a fat ass, oh my God, why would you do that?" before walking away as she began to cry.  Donald witnessed Ciano's actions towards his wife and her crying and immediately questioned Ciano.  That same evening or

early next morning, all of Donald's computer access was cut off and the next morning, November 7, 2010, Reminger principals informed Plaintiffs that Donald and the firm should part ways for "cultural" reasons.  After Donald obtained counsel, he was able to regain access to his clients' files.

Plaintiffs allege that the actions of Reminger and Ciano, acting on behalf of Reminger, constituted a coordinated ouster of Donald.  Plaintiffs assert in their complaint:

> The ouster of Mr. Miller not only appears to have been intentional, but cynically premeditated, in an effort by Reminger, at least in substantial part, to reap the financial rewards of Mr. Miller's efforts without properly compensating him, to attempt to retain his clients for themselves, and to rid themselves of an older lawyer who was opposing Reminger's unethical billing practices.

(DN 1, Exhibit 1, Complaint at ¶ 27).  Plaintiffs allege that Ciano's actions towards Michelle were intentionally performed in front of Donald, in an attempt to garner a reaction from Donald that could serve as a reason for his termination.  Plaintiffs also assert that the actions of Ciano were preplanned, as Donald's access to client files was suspended that same evening or early the next morning. Plaintiffs also assert that after Donald was terminated, Reminger began to make false claims about Donald, including that women had complained of the way he treated them.  Further, Donald states that Conley sent him a text message on November 18, 2010 stating: "Don, my friend, please consider admitting yourself for help.  I will support you every way I can."  This was allegedly a continuation of Reminger's attempt to make Donald appear unable to further manage his clients. This was also the same tactic used by Donald's former start-up firm, which Conley was aware of, and intentionally used to upset Donald.

Plaintiffs have made several claims against Defendants based on these allegations.  As set forth below, we find that only Plaintiffs' claims of assault, battery, and wrongful discharge against public policy.  The other claims do not withstand Defendants' motion to dismiss.

## II. ANALYSIS

When a motion to dismiss is made, the court accepts the well-pleaded facts of the complaint as true and construes the complaint in the light most favorable to the plaintiff, drawing all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). The complaint may be dismissed "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Morgan*, 829 F.2d at 12.

### A. CLAIMS AGAINST DEFENDANT CONLEY

Pursuant to this court's previous memorandum opinion and order entered February 17, 2012 (DNs 20, 21), Defendants argue that we should dismiss all claims against Defendant Conley. (DN 24). This court previously ruled that Conley was fraudulently joined because no colorable claims existed against him under the allegations of the complaint and that under Kentucky law, the claims asserted by Plaintiffs against Conley were without merit. (DN 20). For the reasons outlined in our earlier opinion, we will grant Defendants' motion to dismiss the claims against Conley, including breach of fiduciary duty, fraud, and intentional infliction of emotional distress. *See* (DN 20).

### B. ASSAULT AND BATTERY

Defendants also move to dismiss all claims against Reminger by Michelle, arguing that her assault and battery claims involving Ciano, an employee of Reminger, are not valid as against Reminger. Defendants argue that a respondeat superior theory does not apply where an intentional tort is alleged to have been committed by its employee. Plaintiffs argue that Reminger is liable for the intentional torts committed by its employee, because he was acting with a motivation of furthering the interests of Reminger. In their complaint, Plaintiffs allege that it was the goal of

Ciano to assault and batter Michelle in front of Donald, in order to provoke him into taking actions that could serve as grounds for his termination from Reminger.  (DN 1, Exhibit 1, Complaint at ¶¶ 21-27).  Plaintiffs allege that Donald and Michelle were required to attend this retreat and that it was the scheme of Reminger to obtain grounds for the termination of Donald throughout the weekend, in order to oust him from the firm and retain his clients.  *Id*. at ¶¶ 17, 21-27.

A claim for assault "requires the threat of unwanted touching of the victim, while battery requires an actual unwanted touching." *Banks v. Fritsch*, 39 S.W.3d 474, 480-81 (Ky. App. 2001).  For Plaintiffs to establish that Defendant Reminger is liable for the alleged assault and battery of Plaintiff Michelle, their liability as an employer "under the doctrine of respondeat superior, requires that the proximate cause of a plaintiff's injury must have been an act committed by an employee acting within the course and scope of his employment." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 731-32 (Ky. 2009).  An employee's scope of employment does include an intentional tort committed by an employee "where its purpose, however misguided, is wholly or in part to further the employer's business." *Id*.; *See also Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky. 2005).

In *Patterson*, the Kentucky Supreme Court held that an employer was liable for the intentional actions of an employee in shooting the tires on a vehicle he was attempting to repossess for his employer and stated that

> [a] review of *Wood*, *Frederick*, and *Osborne* make clear that each of those cases focused on the servant's purpose for the intentional act that was perpetrated.  Both the bus driver in *Wood* and the priest in *Osborne* committed acts based on purely personal motives, which were in no way connected with the employer's interests.  On the other hand, in *Frederick*, the employee's misguided decision to shoot his supposed assailant was based solely on a business motive–to protect the store–and liability was proper even though the employer had forbidden such an action.

- 6 -

*Patterson*, 172 S.W.3d at 370.  Therefore, under Kentucky law, Reminger may be liable for the intentional acts committed by its employee, Ciano, if he acted pursuant to a business motive, or to further an interest of Reminger's.  Plaintiffs allege that Ciano's conduct was part of a scheme created by Defendant Reminger that sought to oust Donald from the firm and retain his clients.  Plaintiffs allege that Ciano was not acting from personal motives, but that his behavior towards Michelle "appears to have been substantially motivated by Mr. Miller's inquiries into and protest of Reminger's billing irregularities, calculated to incite Mr. Miller into in [sic] a way to set the scene for his ouster from the firm."  (DN 1, Exhibit 1, ¶ 22).

Taking the allegations from the complaint as true, as we do when a motion to dismiss is made, we find that because Plaintiffs allege that Reminger's employee was motivated by a desire to further the interests of his employer and that he acted as part of a plan coordinated by Reminger to get rid of Donald and retain his clients, Plaintiffs have made a sufficient pleading under Kentucky law to withstand Reminger's motion to dismiss.  Therefore, Defendants' motion to dismiss the assault and battery claim against Reminger will be denied.

## C. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Defendants also argue that Plaintiffs' intentional infliction of emotional distress claims should be dismissed.  In order to establish a claim of intentional infliction of emotional distress under Kentucky law, a Plaintiff must prove that: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was so outrageous and intolerable as to offend generally accepted standards of morality and decency; (3) there is a causal connection between the conduct and the emotional distress; and (4) the emotional distress has been severe.  *Ford v. General Motors Corp.*, 305 F.3d 545, 555 (6th Cir. 2002) (citing *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 67 (Ky. 1996)).  "The

Kentucky Supreme Court has stressed 'that major outrage is essential to the tort.'" *Brown v. Lexington-Fayette Urban Cnty. Gov't. Dep't. of Public Works*, 2010 WL 1529410, *5 (E.D. Ky. April 15, 2010) (quoting *Stringer v. Wal-Mart Stores, Inc*., 151 S.W.3d 781, 791-92 (Ky. 2004)).

We previously held in our ruling on Plaintiffs' Motion to Remand that Donald's intentional infliction of emotional distress claim against Defendant Conley failed as a matter of law.   (DNs 20, 21).  We held that the allegations of Plaintiffs' Complaint did not rise to the level of outrage required by Kentucky courts.  *Id*.  As we discussed in our previous ruling, the level of outrage required by Kentucky courts for an intentional infliction of emotional distress claim is a high level.  As described in a case in the Eastern District of Kentucky,

> IIED in Kentucky is a very high standard to satisfy.  For example, Kentucky courts declined to find that a nurse [who] told a patient who had just delivered a stillborn baby to "shut up," or a citizen who erected a billboard in his yard declaring that his neighbor was a child molester, acted outrageously, intolerably, or "beyond all decency."

*Brown*, 2010 WL 1529410 at * 5 (citing *Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky. 1990). Therefore, we similarly hold here that Plaintiff's remaining intentional infliction of emotional distress claims should be dismissed.  In reviewing the allegations, we find that they do not rise to the level of outrage required to maintain such a claim.

Plaintiffs argue that the entire scheme to oust Donald from Reminger, including the behavior towards Michelle on the firm retreat and the improper billing of clients, are sufficient allegations to reach the level of outrage required by Kentucky, citing to *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 67 (1986).  (DN 23).  However, in our previous ruling, we outlined the facts of *Kroger* and noted their extreme nature.  (DN 20).

- 8 -

*Kroger* involved an employer's "calculated attempt to coerce [the plaintiff] to sign release papers exonerating Kroger for its wrongful discharge of [the plaintiff]." [920 S.W.2d at 66.]  The defendant repeatedly misrepresented to the plaintiff that he would be eligible for another position, knowing that the position was unavailable. *Id*.  After the plaintiff suffered a mental breakdown, the defendant put pressure on his wife for him to sign release papers immediately.  *Id*.  When the plaintiff's psychotherapist recommended that he be placed on total disability, the defendant contacted the disability insurance company's representatives and attempted to stop or delay payments to which the plaintiff was entitled.  *Id*.  The plaintiff suffered further anguish and was engaged in a non-suicide pact by the disability insurance company's own examining physician.  *Id*.  Even after the disability insurance company began making payments to the plaintiff, the defendant then demanded that the carrier conduct surveillance of the plaintiff, sending a photograph and description of the plaintiff to assist the carrier.  *Id*.  Throughout, the defendant continued to put pressure on the plaintiff to sign release papers.  *Id*.  The Court held under these facts that a claim for intentional infliction of emotional distress was proper.  *Id*.

*Id*. at 8-9.  Again, we find that the allegations of Plaintiffs' complaint, even including the alleged assault and battery of Michelle, improper billing practices, and coordinated ouster of Donald, do not rise to the level of outrage contemplated by *Kroger*.  Therefore, Plaintiffs' intentional infliction of emotional distress claims will be dismissed.

### D. PUBLIC POLICY WRONGFUL DISCHARGE

Next, Defendants move to dismiss Plaintiffs' claim of public policy wrongful discharge.  As the Supreme Court of Kentucky recently discussed, "[t]he tort of wrongful discharge of a 'terminable-at-will' employee is a relatively recent development, having arisen out of carefully crafted exceptions to the common law doctrine that 'an employer may discharge his employee for good cause,  no cause, or for a cause that some might view as morally indefensible." *Hill v. Kentucky Lottery Corp*., 327 S.W.3d 412, 420 (Ky. 2010) (citing *Firestone Textile Co. Div. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1984)).  The Court had previously recognized that although the "terminable-at-will" doctrine should be retained, "'a narrow public policy exception should be

adopted' when the firing of an employee undermined a 'most important public policy.'" *Id*. at 420

(quoting *Firestone*, 666 S.W.2d at 734).

In *Firestone*, the Court established limitations and conditions upon when such an exception

would apply, including:

> 1) The discharge must be contrary to a fundamental and well-defined public policy
> as evidenced by existing law.
> 2) That policy must be evidenced by a constitutional or statutory provision.
> 3) The decision of whether the public policy asserted meets these criteria is a
> question of law for the court to decide, not a question of fact.

666 S.W.2d at 731, 733; *See also Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985) (discussing the

three limitations established in *Firestone*).

In *Grzyb v. Evans*, the Supreme Court of Kentucky further explained the common law tort

of wrongful discharge by stating that "only two situations exist where grounds for discharging an

employee are so contrary to public policy as to be actionable absent explicit legislative statements

prohibiting the discharge." 700 S.W.2d at 402 (internal quotations omitted). Those situations are:

> 1) Where the alleged reason for the discharge of the employee was the failure or
> refusal to violate a law in the course of employment.
> 2) When the reason for a discharge was the employee's exercise of a right conferred
> by well-established legislative enactment.

*Hill*, 327 S.W.3d at 422 (citing *Grzyb*, 700 S.W.2d at 402).

Defendants argue that public policy wrongful discharge is limited to circumstances involving

a public policy evidenced by a statute designed to protect an employee or confer rights on

employees, citing to the decision *Early v. Res-Care, Inc*., 2006 WL 1228833, 2006 U.S. Dist. LEXIS

27956 (W.D. Ky. May 5, 2006). In *Early*, the Court held that theft by deception could not support

a public policy wrongful discharge claim, stating that a "cause of action for wrongful termination

must rest upon a public policy or statute which is in some way designed to protect employees in the

employment relationship." 2006 WL 1228833 at *1.  However, a more recent case out of Kentucky state court evidences that under Kentucky law, the statutory provision which establishes the public policy does not have to be directly related to protecting an employee or conferring rights on an employee, when the claim is that the employee is fired for refusing to violate the statute.  *See Hill*, 327 S.W.3d 412.  In *Hill*, the court held that a public policy wrongful discharge claim could be based on an  employee's refusal to violate a perjury law.  *Id*. at *422.  The Court stated that

> the underpinnings of their wrongful discharge claims is the public policy against false testimony in a legal proceeding.  We need not cite every constitutional or statutory provision embracing that public policy as it suffices to note as a matter of law that KRS Chapter 523, *Perjury and Related Offenses*, provides a clear, strong legislative expression of public policy against perjury.

*Id*.  The Court further explained by stating, "We note further that discharging the employee for refusal to violate a law is one of the two situations we cited in *Grzyb* as being so contrary to public policy as to be actionable as wrongful discharge."  *Id*. (citing *Grzyb*, 700 S.W.2d at 402).

Plaintiffs allege that Donald was terminated for his refusal to violate the law of theft by deception, KRS § 514,040, for his protesting of and refusal to acquiesce in Reminger's alleged practice of changing paralegal time to attorney time before billing clients, in order to charge a higher rate.  We find that these allegations are sufficient to support a claim for public policy wrongful discharge under Kentucky law.  *See Hill*, 327 S.W.3d at 422.  Accordingly, Defendants' motion to dismiss Plaintiffs' claim of public policy wrongful discharge will be denied.

E. FRAUD

Defendants also move to dismiss Plaintiffs' fraud claims.  To state a viable claim of fraud, a plaintiff must plead six elements: (1) a material misrepresentation; (2) which is false; (3) known to be false or made recklessly; (4) made with inducement to be acted upon; (5) acted in reliance

thereon; and (6) causing injury.  *United Parcel Service Co. v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999).  Pursuant to Fed.R.Civ.P. 9(b), allegations of fraud must be pled with particularity.  *Scott v. Farmers State Bank*, 410 S.W.2d 717, 722 (Ky. 1966).  While it is not necessary to "recite each minute detail," a plaintiff is required to plead "the time, the place, the substance of the false representations, the facts misrepresented, and the identification of what was obtained by the fraud." *Id*.; *U.S. ex rel. Bledsoe v. Cmty. Health Systems, Inc*., 342 F.3d 634, 643 (6th Cir. 2003) ("In complying with Rule 9(b), a plaintiff, at a minimum, must allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.").

We previously held that Plaintiffs' claim of fraud against Conley did not meet the level of particularity in pleading required by Fed.R.Civ.P. 9(b).  We stated,

> The only apparent basis for Donald's fraud claim against Conley is the allegation that Donald "agreed to a reduced salary that the partners of Reminger assured him would be made up by performance-based bonuses if his business generation was commensurate with his past history." (DN 1, Exhibit 2, Amended Complaint ¶ 10). However, Plaintiffs do not indicate what was specifically promised to Donald and which "partners of Reminger" made such promises.  Without allegations regarding the time, place, and content of any alleged fraudulent misrepresentations made specifically by Conley, Plaintiffs are not likely to succeed on the merits of their claim of fraud against Conley.

(DN 20, p.5).  We again hold that Plaintiffs' allegations fail to provide the particularity required to support a claim of fraud.  Plaintiffs do not provide the time, place, or even the identities of the "partners of Reminger" who actually made the alleged promissory statements to Donald.

In *Our Lady of Bellefonte Hospital, Inc. v. Tri-State Physicians Network, Inc*., 2007 WL 2903231, *6 (Sept. 27, 2007), a United States District Court for the Eastern District of Kentucky dismissed claims of fraud by the plaintiff, stating:

> Fatal to its claim for fraudulent misrepresentation is [the plaintiff's] failure to identify the "agents" of the hospital who made the alleged representations. Who were they? Did they have the real or apparent authority to bind the hospital? The silence in response to these questions looms large in the Court's mind in considering [the plaintiff's] claim int his regard.
>
> Nor does [the plaintiff] identify the exact time or place of the making of these alleged statements. Again, [the plaintiff's] allegations lack specificity and are on the verge of running afoul even the most liberally of notice pleading standards.

*Id.* Similarly, we find that Plaintiffs' failure to identify the "partners of Reminger" that made the allegedly fraudulent statements to Donald or the time or place that any of the statements were made renders the allegations of Plaintiffs' fraud claim insufficient to withstand Defendants' motion to dismiss.

Further, Defendants argue that a claim of fraud "cannot be predicated upon statements which are promissory in their nature" and which "relate to future actions or conduct." *Mario's Pizzeria, Inc. v. Federal Sign and Signal Corp.*, 379 S.W.2d 736, 740 (Ky. 1964) (affirming the dismissal of a fraud claim because the claim was based on a promissory statement that related to future actions or conduct). Plaintiffs cite to *Our Lady of Bellefonte*, for the proposition that a fraudulent inducement claim is a subtype of a fraud claim and can be based on a defendant's representations of future conduct. (DN 23, p. 14-15). However, in *Our Lady of Bellefonte*, the Court seemingly interpreted the claims of the plaintiff to be claims for fraudulent inducement and yet still specifically held that the plaintiff's "claims of fraud are barred because predictions of future conduct do not constitute actionable fraud." 2007 WL 2903231 at *6 n.2, *6-*7. Therefore, we find that the allegations of Plaintiffs' fraud claims are also insufficient because the alleged promises relate to future conduct and are promissory in nature.

F. BREACH OF CONTRACT

- 13 -

Defendants seek to dismiss Plaintiffs' breach of contract claim. Plaintiffs failed to respond to Defendants' argument that his breach of contract claim is precluded by his Employment Agreement which creates an at-will employment relationship, and also failed to challenge Defendants' argument that his breach of contract claim was based on an unenforceable agreement to agree. As Defendants pointed out, by failing to contest these arguments, Plaintiffs conceded them. *See Lucas v. Chance*, 121 Fed. Appx. 77, 79 n.2 (6th Cir. 2005).

Further, a plaintiff must allege "definite and certain terms setting forth promises of performance to be rendered by each party and the terms must be sufficiently complete and definite to enable the court to determine the measure of damages." *Our Lady of Bellefonte Hosp., Inc.* v. Tri-State Phys. Network, 2007 WL 2903231 at *2 (internal quotations omitted) (dismissing breach of contract claim because the plaintiff failed to set forth the terms of the contract, the consideration for the performance, or the time specified for performance); *Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. Ct. App. 2007) (granting summary judgment because contractual terms were not sufficiently specified); *Venters v. Stewart*, 261 S.W.2d 444, 446 (Ky. 1953).

Plaintiffs' Complaint states that "[w]hen Reminger terminated Mr. Miller without legal cause and failed to pay him the bonuses he had been promised, commensurate with the income he was generating for Reminger, it breached its contract with Mr. Miller." (DN 1-1, at ¶ 33). Plaintiffs' Response to Defendants' Motion to Dismiss asserts:

> Mr. Miller was offered, and he has alleged that he was offered, performance-based bonuses, in return for coming to work as an attorney for and successfully bringing his clients to Reminger, which constitutes offer, acceptance, and mutual consideration. Mr. Miller performed on his end, coming to work for Reminger as an attorney and bringing his clients' business to it, but was not paid the performance-based bonuses he was promised, and he has alleged that he performed but was not paid them by Reminger, which constitutes breach and damages. Accordingly, Mr. Miller plausibly can establish contract, its breach, and damages.

- 14 -

(DN 23).  Upon a review of Plaintiffs' Complaint and the pleadings, we find that Plaintiffs have not set forth the required specificity to support a breach of contract claim.  Further, Plaintiffs have conceded that the breach of contract claim is barred by the written Employment Agreement because they have failed to respond to that argument of Defendants.  Thus, the motion to dismiss Plaintiffs' breach of contract claim will be granted.

G. PROMISSORY ESTOPPEL

Defendants also move to dismiss Plaintiffs' promissory estoppel claim.  Under Kentucky law, a claim for promissory estoppel requires:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person  and which does induce such action or forbearance is binding if injustice can be avoided only be enforcement of the promise.

*Lichtefeld-Massaro, Inc. v. R.J. Manteuffel Co.*, 806 S.W.2d 42, 44 (Ky.App. 1991) (quoting Restatement (Second) of Contracts § 90(1) (1979)).  Defendants assert that Plaintiffs' promissory estoppel claim is barred by the parties' employment agreement, arguing that because the parties had an employment agreement explicitly defining the terms of Donald's employment and compensation, Plaintiffs cannot now argue additional promises were made to support a claim for promissory estoppel.  *See* (DN 7-1, p.18) (citing *Fruit Growers Express Co. v. Citizens Ice & Fuel Co.*, 112 S.W.2d 54, 56 (Ky. 1937); *General Aviation, Inc. v. Cessna Aircraft Co.*, 915 F.2d 1038, 1042 (6th Cir. 1990) (promissory estoppel is not designed to give a party to a negotiated contract a "second bite at the apple in the event it fails to prove breach of contract")).

Plaintiffs argue that *Glogower v. Miller* stands for the proposition that promissory estoppel claims are viable in the employment context.  (DN 23, p.17) (citing 2002 Ky. App. LEXIS 2338,

*13) (Ky. App. Dec. 20, 2002)).  However, in *Glogower*, the Court held that the promissory estoppel claim was viable because the alleged inducing promise dealt with "continuation in employment" after a job was accepted.  2002 Ky. App. LEXIS 2338 at *13.  The allegations of Plaintiffs' Complaint are easily distinguishable, as Plaintiffs assert that promises were made to induce Donald to take a lower salary in accepting his employment agreement with Reminger.  (DN 1-1, ¶¶ 10, 13, 33).  This is more similar to the facts of *Davis v. Siemens Medical Solutions USA, Inc*., 399 F.Supp.2d 785 (W.D. Ky. 2005).

In *Davis*, the plaintiff brought an action for additional compensation arising from his employment relationship with the defendant, relying on theories of promissory estoppel, breach of fiduciary duty, misrepresentation, and breach of contract.  *Id*. at 789.  The Court acknowledged that the issue of whether a party may assert a promissory estoppel claim based on an oral promise made before an employment contract was entered and that is otherwise barred by the parol evidence rule, was an issue that had not been directly addressed by a Kentucky state court.  *Id*. at 797.  The Court then examined "decisions and rationales from other jurisdictions that have decided this specific issue, general Kentucky law, and policy considerations for guidance in determining how the Kentucky Supreme Court would likely decide this issue."  *Id*. at 798.  The Court held:

> The majority of other jurisdictions has held that a prior inconsistent oral promise cannot be the basis of a promissory estoppel claim.  *Durkee v. Goodyear Tire & Rubber Co.*, 676 F.Supp. 189, 192 (W.D. Wis. 1987) ("To entertain a theory of recovery that makes a prior, inconsistent promise enforceable is to write the parole evidence rule out of existence."); *All-Tech Telecom, Inc. v. Amway Corp*., 174 F.3d 862, 869-70 (7th Cir. 1999); *Davis v. University of Montevallo*, 638 So.2d 754, 758 (Ala. 1994); *Big G Corp. v. Henry*, 148 Vt. 589, 536 A.2d 559, 562 (1987); *Johnson v. Curran*, 633 P.2d 994, 996-97 (Alaska 1981); *Prentice v. UDC Advisory Services, Inc*., 271 Ill.App.3d 505, 207 Ill.Dec. 690, 648 N.E.2d 146, 152-53 (1995).
>   . . . .
> Thus, the general rationale for the majority rule is that the written agreements supercede and incorporate all prior oral statements on subjects covered by the written

- 16 -

agreement. The Seventh Circuit's interpretation of promissory estoppel is consistent with the more limited scope of the doctrine apparent from a full review of Kentucky cases. To hold otherwise, makes the formalities of a written contract meaningless.

The Kentucky courts have also been reluctant to contravene the technical requirements of contract law. In *Rivermont Inn, Inc*., Kentucky's most recent and most thorough explanation of the doctrine of promissory estoppel, the Court of Appeals held that promissory estoppel could not be applied to defeat the statute of frauds under the particular circumstances involved. *Rivermont Inn, Inc*., 113 S.W.3d at 643. *Rivermont* is a different case from ours in many respects. Its significance, however, is that the Kentucky Court of Appeals was not inclined to allow the doctrine of promissory estoppel as means of avoiding rules of contract interpretation and compliance. *See id.* at 642 (noting that detrimental reliance on an oral promise is "not sufficient to defeat the statute of frauds").

The overarching principle suggested in *Rivermont Inn, Inc*. applies just as clearly to the common law parol evidence rule as it does to the statute of frauds. Kentucky views the parole evidence rule as a firm and well-established rule of law. The rule dates back to at least the mid–19th–century. 19th-century. [sic] *See, e.g., Park v. Price*, 1 Ky. Op. 17 (1866) ("It is a well-settled principle that parol evidence is not admissible to vary the terms or import of a writing..."). Since then it has been interpreted as "more than a rule of evidence ... It is one of substantive law." *Gibson v. Sellars*, 252 S.W.2d 911, 913 (Ky. 1952). To allow oral promises otherwise inadmissible under the parol evidence rule to form the basis of a promissory estoppel claim would eviscerate the rule and disregard at least 140 years of jurisprudence.

Accordingly, this Court finds that an oral promise made prior to the execution of a written agreement that is inconsistent with the unambiguous terms of the written agreement cannot form the basis of a promissory estoppel claim. As applied to the instant case, [the plaintiff] is precluded from asserting promissory estoppel as a grounds for relief.

*Id*.

Similarly here, Plaintiffs allege that oral representations were made to Donald prior to his accepting the employment agreement with Reminger, which induced him to accept a lower salary in the anticipation of receiving large bonuses if his business generation was in line with his past business generation. (DN 1-1, ¶¶ 10, 13). Just as in *Davis*, such an oral representation before entering an employment agreement cannot form the basis of a promissory estoppel claim under Kentucky law. *See* 399 F.Supp.2d at 798. Therefore, Plaintiffs' estoppel claim must fail and should be dismissed.

## H. IMPLIED CONTRACT/QUASI CONTRACT

Defendants also seek dismissal of Plaintiffs' implied or quasi-contract claim. Kentucky law requires that a plaintiff seeking to prevail on a claim for breach of an implied contract must establish "an actual agreement or meeting of the minds [that is] not expressed, [but] is implied or presumed from acts or circumstances which, according to the ordinary course of dealing and the common understanding of men, a mutual intent to contract is shown." *Cheshire v. Barbour*, 481 S.W.2d 274, 377-78 (Ky. 1972) (citing *Kellum v. Browning's Adm'r*., 21 S.W.2d 459 (Ky. 1929)). Defendants argue that the written employment agreement similarly bars any claim for an implied or quasi-contract. (DN 7-1). Plaintiffs contend in response that a plaintiff may pursue causes of action in the alternative. (DN 23).

While a plaintiff may plead in the alternative, Kentucky law holds that "when an express contract is made defining the circumstances under which an obligation may arise with reference to a certain subject matter such contract excludes the possibility of an implied contract concerning the same matter." *Mortgage House of America, LLC v. Kremer*, 2010 WL 2540100, *3 (Ky. App. June 25, 2020) (quoting *Sparks Milling Co. v. Powell*, 143 S.W.2d 75, 76 (Ky. 1940)); *Johnson Controls, Inc. v. Jay Industries, Inc*., 459 F.3d 717, 730 (6th Cir. 2006). Therefore, because Donald had a written employment agreement with Reminger, Plaintiffs' claim for an implied or quasi contract also fails and will be dismissed.

## I. QUANTUM MERUIT

Defendants also seek to dismiss Plaintiffs' quantum meruit claim on the basis that the written employment agreement between Donald and Reminger bars such a claim. A claim of quantum meruit, or unjust enrichment, requires a showing that: (1) valuable services were rendered; (2) to the

person from whom recovery is sought; (3) which services were accepted by that person, or at least were received by that person, or were rendered with the knowledge and consent of that person; and (4) under such circumstances as reasonably notified the person that the plaintiff expected to be paid by that person. *Quadrille Bus. Sys. v. Ky. Cattlemen's Ass'n.*, *Inc.*, 242 S.W.3d 359, 365-66 (Ky. App. 2007). Plaintiffs again argue that this claim may be maintained as an alternative theory. However, the existence of the written employment agreement between the parties precludes this claim also. Kentucky law dictates that "the doctrine of unjust enrichment has no application where there is an explicit contract which has been performed." *Stonestreet Farm, LLC v. Buckram Oak Holdings, N.V.*, 2010 WL 2696278, *14  (Ky. App. July 9, 2010) (upholding the trial court's dismissal of the plaintiff's claim of unjust enrichment); *See also Codell Const. Co. v. Com.*, 566 S.W.2d 161, 165 (Ky. App. 1977). Therefore, we hold that Plaintiffs' quantum meruit claim also fails and should be dismissed.

J. BREACH OF FIDUCIARY DUTY

Defendants also move to dismiss Plaintiffs' claim for breach of a fiduciary duty against Reminger. Under Kentucky law, a breach of fiduciary duty claim requires a plaintiff to prove: "(1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe such duty; and (3) an injury proximately resulting therefrom." *Miles Farm Supply, LLC v. Helena Chemical Co.*, 2008 WL 3010064, *12 (W.D. Ky. Aug. 1, 2008). We previously addressed Plaintiffs' claim for breach of fiduciary duty against Conley in our ruling on Plaintiffs' Motion to Remand, holding that because Donald's employment agreement with Reminger stated that he was an employee, Donald could not establish that Conley owed him a fiduciary duty. *See* (DN 20). The same rationale is

relevant to Plaintiffs' claim against Reminger.  In our Memorandum Opinion entered Feb. 17, 2012,

we stated:

> Plaintiffs' first claim against Conley for breach of a fiduciary duty fails because no fiduciary relationship existed between the parties.  A plaintiff must establish a fiduciary relationship to state a claim for breach of a fiduciary duty. *Abney v. Amgen, Inc*., 2005 WL 1630154 at \*9 (E.D. Ky. July 8, 2005).  The general definition for a fiduciary relationship under Kentucky law is that a fiduciary relationship "is one founded on trust or confidence reposed by one person in the integrity and fidelity of another and which also necessarily involves an undertaking in which a duty is created in one person to act primarily for another's benefit in matters connected with such undertaking."  *Steelvest, Inc. v. Scansteel Service Center, Inc*., 807 S.W.2d 476, 485 (Ky. 1991).
>
> We do not find that a fiduciary relationship existed between Donald and Conley, because they were both employees of a corporation and not business partners, as Plaintiffs argue.
>
> . . . .
>
> The parties' "Supplemental Employment Agreement For Senior Attorneys Not Licensed in Ohio" explains that Donald "is not licensed to practice law in the State of Ohio, and is therefore not eligible to hold stock in Reminger." (DN 13, Exhibit 3).  Also, the Employment Agreement specifically provides, "This employment contract may be terminated by either Employer or Employee without cause or fault of Employer or Employee, upon giving thirty (30) days' written notice to the other party." (DN 13, Exhibit 2, Employment Agreement).  Reviewing the Employment Agreement, we find that it explicitly contemplates an employment at will relationship.  It is undisputed that Conley is also not licensed to practice law in Ohio and there is no contention that Conley has any ownership interest in Reminger.  Therefore, as an at will employee, Donald's claim for breach of fiduciary duty against another employee, Conley, fails as a matter of law.  *See Gresh v. Waste Services of America, Inc*., 311 Fed. Appx. 766, 771, 2009 WL 383727 (6th Cir. Feb. 17, 2009).
>
> Plaintiffs argue that the court should look past the parties' agreements and find that Conley owed Donald a fiduciary duty despite his status as a fellow employee in Reminger's employment contract.  (DN 8, Exhibit 1, Plaintiffs' Memorandum in Support of Their Motion to Remand, p. 6).  Plaintiffs assert that we should consider Reminger web pages and press releases, naming Donald a "partner" and find that Conley and Donald acted as partners.  (DN 8, Exhibit 1).  Plaintiffs argue that "because the circumstances which may create a fiduciary relationship are so varied, it is extremely difficult, if not impossible to formulate a comprehensive definition of it that would fully and adequately embrace all cases."  (DN 15, p.2) (quoting *Steelvest, Inc*., 807 S.W.2d at 485).
>
> However, in *Gresh v. Waste Services of America, Inc*., the United States Court of Appeals for the Sixth Circuit, applying Kentucky law and faced with a

- 20 -

similar argument, held that an at will employee could not ground his breach of fiduciary duty claim on his status as an at will employee. 311 Fed. Appx. at 771. In *Gresh*, the plaintiff argued that despite a written employment agreement that explicitly stated he was an at will employee, he and the defendants were "essentially partners, or co-owners" and thus he was owed a fiduciary duty. *Id*. at 771. In *Gresh*, the plaintiff attempted to use evidence outside of the agreement to convince the Court of an oral agreement between himself and the defendants to act as partners. *Id*. The Court rejected the plaintiff's argument and held that the plaintiff's "efforts to elevate the relationship to a de facto partnership" was in direct conflict with the agreed-upon terms in the parties' written agreement. *Id*. The Court held that under the agreement, the plaintiff was an at will employee in an "ordinary business relationship" and thus the defendants did not owe the plaintiff a fiduciary duty, dismissing the claim for breach of fiduciary duty as a matter of law. *Id*. at 772.

Similarly, in this case, Plaintiffs argues that the Court should look beyond the parties' employment agreement and find that Donald and Conley were business partners. However, the agreement between the parties is explicit that Donald was an at will employee and precludes Donald from having "partnership" status within the company. It is undisputed that Donald and Conley did not own any interest in the company. Reminger was established in Ohio as a professional association. Under Ohio law, a professional association can be organized only by "[a]n individual or group of individuals each of whom is licensed to render within this state the same kind of professional service..." ORC § 1785.02. Neither Conley nor Donald were licensed to practice law in Ohio and were thus not qualified to be shareholders in the company, as mandated by Ohio law, and as provided in Reminger's employment agreements. Further, such a professional association in Ohio is a corporation, not a partnership. *O'Neil v. United States*, 410 F.2d 888, 888 (6th Cir. 1969). Therefore, Conley and Donald were not partners, but employees. Similar to the United States Court of Appeals for the Sixth Circuit's ruling in *Gresh*, we reject Plaintiffs' argument that we should consider press releases by Reminger calling Donald a "partner." Reminger's employment agreement was specific that Donald was an at will employee within the company. Thus, Plaintiffs' claim for breach of fiduciary duty against Conley is not colorable, because no fiduciary relationship existed.

(DN 20, p.2-5).

Again, we find that Donald was an employee of Reminger, based on the undisputed written employment agreement between the parties. Therefore, even accepting all the allegations of the Complaint as true, we conclude that Reminger did not undertake a fiduciary duty towards Donald, or a duty to act primarily for Donald's benefit. Plaintiffs' claim for breach of fiduciary duty against Reminger fails. *See Davis v. Siemens Med. Solutions*, 399 F.Supp.2d 785, 801-02 (W.D. Ky. 2005)

(employer did not assume fiduciary duties under employment agreement).  Defendants' motion to dismiss Plaintiffs' breach of fiduciary duty claim will be granted.

### K. AGE DISCRIMINATION

Last, Defendants seek to dismiss Plaintiffs' age discrimination claim against Reminger. Plaintiffs allege a claim of age discrimination against Reminger pursuant to KRS § 344.040 *et seq*. (DN 1-1).   A discrimination plaintiff may establish a viable cause of action either by introducing direct evidence of discrimination or by proving inferential and circumstantial evidence which would support an inference of discrimination.  *Wilson v. Dana Corp*., 210 F.Supp.2d 867, 883 (W.D. Ky. 2002) (quoting *Kline v. Tenn. Valley Auth*., 128 F.3d 337, 348 (6th Cir. 1997)).   In order for direct evidence to establish discrimination, "[t]he evidence must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [age], but also that the employer acted on that predisposition."  *Id*.  No inferences must be needed in order to conclude that the challenged employment action was motivated, at least in part, by unlawful means.  *Id*.

Plaintiffs rely on the statement of a Reminger principle, Ciano, to Michelle at the retreat in the Bahamas to show that Reminger was predisposed to discriminate against Donald on the basis of his age.  Plaintiffs allege that Ciano stated: "Look Michelle, we took a chance on Don.  We just don't hire old guys like Don, look around you.  We hire young people, and brain wash them, and keep them for years."  (DN 1-1).  Plaintiffs assert that this statement with the combined firing of Donald the next day amount to sufficient allegations to support a claim for age discrimination against Reminger.  *Id*. (citing *McClure v. Dollar General Stores, Ltd.*, 2008 WL 4092855, *4, 2008 Ky. App. LEXIS 309 (Ky. App. Sept. 5, 2008).  We find that the alleged statement by Ciano does not establish direct evidence of discrimination.  Even taking the alleged statement by Ciano as true,

- 22 -

it does not reveal that Reminger had any intention to fire Donald because of his age, it only pertained to the type of employees Reminger preferred to hire and how it treated them.  The case which Plaintiffs rely on, *McClure v. Dollar General Stores, Ltd.*, involved a statement by a supervisor that the plaintiff "needed to retire anyway, because she was 67 years old." 2008 WL 4092855 at *3.  The alleged statement relied on by Plaintiffs here differs, because again, it related to the hiring preferences of Reminger and did not reveal any intention to fire Donald because of his age, or any animosity towards Donald because of his age.

Plaintiffs also argue that they have properly asserted a *prima facie* age discrimination claim based on indirect evidence.  When discrimination on the basis of age is alleged and sought to be proven on the basis of indirect evidence, the governing test involves the burden-shifting analysis outlined by the United States Supreme Court in *McDonnell Douglas Corporations v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  *See Shoonmaker v. Spartan Graphics Leasing*, LLC, 595 F.3d 261, 264 n. 2 (6th Cir. 2010) (applying *McDonnell Douglas* to an age discrimination suit).  Under the *McDonnell Douglas* burden-shifting test, Plaintiff must first establish a *prima facie* case of discrimination.  *See Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 391 (6th Cir. 2009).  If Plaintiff is able to establish a *prima facie* case of discrimination, the burden then shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its decision.  *Id*.  If Defendant satisfies this burden, Plaintiff then must prove that the legitimate reasons offered by Defendant are merely a pretext for discrimination.  *Id*.

In order to establish a *prima facie* case of discrimination, Plaintiffs must show that (1) Donald is a member of a protected class; (2) his job performance met Defendant's legitimate expectations; (3) he suffered an adverse employment action; and (4) that similarly situated

- 23 -

employees outside the protected class were treated more favorably.  *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824; *see also Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1981 (6th Cir. 1994) (overruled on other grounds by *Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009)).  Kentucky law modifies the fourth element in age discrimination cases, requiring a plaintiff to establish replacement by a significantly younger person, even if they are within the protected class.  *Williams v. Wal-Mart Stores, Inc.*, 184 S.W.3d 492, 496 (Ky. 2005).

We find that Plaintiffs have not made sufficient allegations of an age discrimination claim to withstand Defendants' motion to dismiss.  Plaintiffs have alleged that: Donald is a member of a protected class, being fifty-one years old; Donald's business generation was excellent and he received a congratulatory email on his client revenues and business generation; and Donald was terminated by Reminger.  *See* (DN 1-1).  However, Plaintiffs have not made any allegations regarding the modified fourth element for a claim of age discrimination under Kentucky law, which requires that a plaintiff establish that a significantly younger person replaced the plaintiff.  *See Williams*, 184 S.W.3d at 496.  Plaintiffs only argue that "many younger lawyers employed by Reminger (Complaint, paragraph 18) were not treated the way he was or terminated."  (DN 23, p. 24).  We therefore hold that Plaintiffs have not made sufficient allegations to support a *prima facie* claim for age discrimination under Kentucky law and that Defendants' motion to dismiss the claim should be granted.

An order consistent with this opinion will be entered this date.

D02