UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

MICHELLE MILLER, et al.

      PLAINTIFFS

v.

      CIVIL ACTION NO. 3:11-CV-00315S

REMINGER CO., L.P.A.,

      DEFENDANT.

## REMINGER'S SETTLEMENT CONFERENCE STATEMENT

The defendant, Reminger Co, L.P.A., by counsel, hereby tenders this settlement conference statement pursuant to this Court's August 29, 2012 Order.

## STATEMENT OF REMAINING CLAIMS, DEFENSES, AND GOVERNING LEGAL PRINCIPLES

The two claims remaining before the Court are Mr. Miller's claim for public policy wrongful discharge and Mrs. Miller's claim for assault and battery for the alleged touching of her upper left arm.

### 1.    Mr. Miller's public policy wrongful discharge claim.

The tort of public policy wrongful discharge against public policy is meant to provide a very narrow exception to Kentucky's "at-will" employment doctrine. *Firestone Textile Co. Div. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1984). Reminger has numerous defenses to Mr. Miller's public policy wrongful discharge claim which make it unlikely that this claim will withstand a motion for summary judgment.

Reminger's first defense is that Mr. Miller was not "discharged" from his employment. Mr. Miller quit Reminger in front of countless witnesses, including his wife.

There are also numerous emails from both Mr. and Mrs. Miller in which they admit that Mr. Miller quit—and was not fired—from his position at Reminger.

Second, assuming for the sake of argument that Reminger did fire Mr. Miller, Reminger's next defense is that this alleged firing was not contrary to a "fundamental and well-defined public policy." *Id.* The public policy supposedly at issue here is found in KRS 514.040, Kentucky's theft by deception statute. The theft by deception statute was not intended by the legislature to apply to the dynamic and sensitive nature of a law firm's billing practice, and the Court should decline to extend the breadth of the statute's policy beyond what it explicitly articulates. *See, e.g., Banks v. Department of Educ., Bureau of Rehabilitation*, 462 S.W.2d 428 (Ky. 1971) (statute barring illegal operation of a motor vehicle not sufficient policy grounds for wrongful discharge when employer ordered a drunk employee to drive employer home).[1]

Reminger's next defense to Mr. Miller's wrongful public discharge claim is that he cannot establish that his alleged dismissal jeopardized the public policy protected by the theft by deception statute. *Wilkes v. McBee Sys., Inc.*, 1999 U.S. App. LEXIS 9267, at *15 (6th Cir. 1999). Because Mr. Miller was merely an internal whistleblower, his alleged firing would have no effect on the relevant public policy. *See, e.g., Faust v. Ryder Commer. Leasing & Servs.*, 954 S.W.2d 383 (Mo. App. 1997) (abrogated on other grounds) (simply reporting to a superior potentially criminal acts and not "exposing" the acts does not actually help public policy in any way).

---

[1] Further complicating Mr. Miller's assertion of a well-defined public policy are issues regarding attorney-client confidence. In order for Mr. Miller to establish his claim and show that he was fired because he failed to acquiesce in an alleged billing scheme, he will have to violate his client's confidential communications—ostensibly for his own benefit (and not the public's).

2

Finally, if Reminger fired Mr. Miller, it had numerous overriding business justifications for doing so. Mr. Miller committed a litany of fireable offenses—using firm email to harass and threaten former partners while simultaneously soliciting employment from them, harassing, threatening, and lying to his bosses, sending inappropriate sexual comments to his co-workers, failing to meet firm targets—which provide alternative valid reasons for his discharge. *See, e.g., Kuivila v. City of Conneaut*, 430 Fed. Appx. 402 (6th Cir. 2011) (granting summary judgment because poor performance and inappropriate behavior towards a female coworker provided legitimate business justification for discharge); *Wilkes*, 1999 U.S. App. LEXIS at *18 (defendant did not discharge plaintiff for filing an OSHA complaint, but because of a pattern of outrageous behavior); *Dorricott v. Fairhill Ctr. For Aging*, 1999 U.S. App LEXIS 17985 (6th Cir. 1999) (plaintiff could not allege facts contesting that she was underperforming and thus employer had a legitimate reason to discharge her).

### 2.    Mrs. Miller's assault and battery claim.

Mrs. Miller claims that <u>Reminger</u> committed assault and battery when Mario Ciano, a non-party Reminger attorney, "offensively physically touched" her when he "grabbed Mrs. Miller's upper left arm to pull her on the dance floor." In order to ultimately hold Reminger liable for the alleged assault and battery, Mrs. Miller will have to establish that Mr. Ciano's touching of Mrs. Miller's upper left arm was an intentional act motivated by a desire to further Reminger's interests as part of an elaborate scheme to steal Mr. Miller's legal clients. (6/6/12 Op. at 7.)

Reminger's defense to Mrs. Miller's claim is that there is no evidence establishing that Mr. Ciano's alleged touching of her upper left arm was part of some calculated

scheme to steal Mr. Miller's clients or to get him to resign from the firm.[2]  Mr. Ciano suggested that Mrs. Miller dance and touched her upper left arm as a gesture to get her to dance, and not to further any alleged Reminger scheme.  Reminger will also defend against Mrs. Miller's claim by introducing her emails to various Reminger employees in which she explicitly acknowledged that the actions and comments allegedly giving rise to her assault and battery claim—the touching of her upper left arm and suggestion that she dance—were not acts constituting a battery or assault.

## DAMAGE CALCULATIONS

In their Initial Disclosures, the plaintiffs identify approximately $130,000 in compensatory damages for Mr. Miller's wrongful discharge claim, which they claim is comprised of:

- Approximately $5000 for the "extraordinary expenses incurred by Mr. Miller in maintaining the practice of law" after his alleged discharge from Reminger;

- Approximately $25,000 for his "unpaid performance bonus"; and,

- Approximately $100,000 in an "unpaid production bonus."

Mr. Miller's attempt to recover $125,000 in "unpaid bonuses" is nothing more than a back-door attempt to recover damages on his dismissed fraud and breach of contract claims.  Mr. Miller's fraud and breach of contract claims sought to recover damages for promises allegedly made regarding certain performance and production bonuses to be paid by Reminger.  In dismissing the fraud claim, this Court determined that Mr. Miller had failed to allege his fraud claim with particularity because he failed to identify the time, place, substance of the false representations, the facts

---

[2] If Mr. Miller claims that the alleged assault and battery was part of a Reminger scheme to get him to resign from the firm, he would essentially be conceding that he quit—and was not fired.

4

misrepresented, and the identification of what was obtained by the fraud." (6/6/12 Op. at 12.) This Court also determined that the alleged promises regarding any amounts and types of bonuses to be paid in the future were not actionable. (*Id.* at 13.) This Court dismissed the breach of contract claim because Mr. Miller failed to set forth the required specificity to support his claim because he failed to identify the amount and type of the bonuses to which he claims he was entitled. (*Id.* at 12.) Further, the claim was barred by the written employment agreement. (*Id.*) Because this Court has already determined that Mr. Miller is not entitled to recover any alleged "unpaid bonuses," Mr. Miller cannot recover the $125,000 he claims in unpaid bonuses on his wrongful discharge claim.

Mr. Miller is also not entitled to the $5000 he claims as "extraordinary expenses necessary to maintain the practice of law." Mr. Miller did not incur any expenses as a result of his alleged wrongful discharge because he was employed by a new firm before he even left Reminger. Prior to Mr. Miller's official separation from Reminger, Mr. Miller announced his association with his present employer, Quintairos, Prieto, Wood, & Boyer, where he now acts as the named managing partner of that firm's Louisville office. Therefore, Mr. Miller has experienced no damages as a result of the alleged wrongful discharge.

The plaintiffs also seek to recover punitive damages and damages for the alleged "humiliation, embarrassment, personal indignity, apprehension about their and their family's past, current and future economic well-being, emotional distress, and mental anguish." There is no evidence to suggest that the plaintiffs have suffered any of the claimed damages, and in fact, the evidence establishes that if the plaintiffs have

experienced any "humiliation, embarrassment, etc.," it is as a result of their own conduct.  In any event, it is a bit incredible for the plaintiffs to claim that they suffered any apprehension about their "past, current, and future economic well-being" when Mr. Miller was employed at Quintairos before he quit Reminger, and he was named managing partner of that firm's Louisville office soon thereafter.

Therefore, Reminger's position remains that the plaintiffs have suffered no damages as a result of its alleged conduct.


Matthew W. Breetz
Andrew G. Beshear
Amber D. Nicely
STITES & HARBISON, PLLC
400 West Market Street
Suite 1800
Louisville, KY  40202-3352
Telephone:   (502) 587-3400
Fax:  (502) 587-6391
COUNSEL FOR DEFENDANT,
REMINGER CO., L.P.A.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via hand delivery this 11th day of September, 2012 upon:

Robert W. Bishop
BISHOP & ASSOCIATES, PSC
6520 Glenridge Park Place,
Suite 6
Louisville, KY 40222
COUNSEL FOR PLAINTIFF

Martha Eastman
EASTMAN LAW OFFICE
3721 Taylorsville Rd
Louisville KY 40220
COUNSEL FOR PLAINTIFF

Amber D. Nicely